Vicki Firstman appearing on behalf of Victor De Lacerda, the petitioner in this case. As the Court is aware, viewed under the lens of AEDPA, the critical issue in this case is whether Mr. De Lacerda received ineffective assistance of counsel when his trial attorney informed him that he had no defense to the serious felony and strike allegations that were based upon second-degree burglary convictions that he suffered in 1976. Our case is ineffective assistance, it's not ex post facto, right? It is ineffective assistance, Your Honor, but of course The theory of it is that the lawyer didn't spot an ex post facto. Exactly. So I think the ex post facto issue, of course, is very important, as Judge Fogel of the District Court recognized. I don't really understand the ex post facto issue. It looks like the punishment, this fellow did not receive an enhanced punishment for what he did after he did it. Instead, the judge who sentenced him after the burglaries had an option, either make it a misdemeanor, send him to the youth authority, or make it a felony and send him to prison. And in order to make it a misdemeanor, he had to say so, and he didn't. So it was a felony. Well, Your Honor. It wasn't enhanced, so I don't understand. Okay. Well, yeah, that was the case had the amendment to California Penal Code Section 17b2 applied to Mr. De Lacerda's case. But as the Court is well aware, ex post facto law is governed by the law in effect at the time the crime is committed. And when these burglaries were committed, a commitment to the youth authority automatically and by operation of law converted the offenses into misdemeanors. Well, he committed the crimes. Yes, Your Honor. He also could have been, had that law remained in effect at the time, that version of 17b remained in effect at the time of the sentencing, he could have been sentenced to state prison for up to 15 years. He could have been sentenced to state prison. Yes, that's correct. So when he committed the crime, he was eligible for either a misdemeanor wobbler sentence. That's right. Or it could have gone misdemeanor or it could have gone felony. That's right. So I, you know, when you ex post facto principles, you look at, you know, whether there was a change, whether the stats, whether later on they changed the punishment. In this case, punishment, we're talking about punishment. Whether they increased the punishment that he was likely he would receive. I don't see how they did that here. Because at the time he committed the crime, he was eligible for a sentence up to 15 years in state prison. He got five in the county, in CYA. Well, the question here is, you know, the ex post facto clause applies under Lindsay v. Washington and Miller v. Florida, even if the punishment for the offense itself is not changed. Obviously, in Miller v. Florida, the presumptive guidelines were changed after the offense was committed. And even though the defendant in that case could have received the same sentence, the court, by virtue of the revised guidelines, was vested with discretion. It facilitated the court's discretion to impose a much more onerous sentence. That was also the case in Brown v. Pommatier. The fact that ---- But when this judge sentenced him, he had the discretion at that time to sentence him to 15 years in state prison. Yes, he did. However, he ---- that sentencing judge in 1976 made a decision to utilize the Welfare and Institutions Code provision, 1731.5, which was designed for youthful offenders, to commit Mr. De La Cerda to the youth authority. I submit that statute has obvious policy considerations that benefit not only the offender but society as well, you know, to keep youthful offenders out of the youth authority, to put a focus on rehabilitation. So for the benefit not only of the offender but for society, there's a better chance of rehabilitation in the future. Once ---- Even for felonies, right? For ---- well, that's the case, Your Honor. That's true. But under ---- That same policy, even though the crime was a felony, still to put him with the youth authority. That's true. That's true. Wouldn't it make a difference if the sentencing had all taken place before the change in the law, like a doing case? No, I don't think so. Not for purposes of the ex post facto analysis because, as the Court knows, again, it's not the time of sentencing that governs ex post facto law. It's the time of the offense. And here, you know, as in Brown v. Palmatier, the Court was vested with a discretion that it otherwise would not have had, you know, once it decided to employ 1731.5 and commit Mr. De La Cerda to the youth authority. Well, the reason I was asking that was that in that case, if the sentencing had occurred before as it did in doing, the judge didn't have that option, didn't have the option of making a statement. Yes. Right. That's right. Whereas in this case, the judge could have made a statement or not made a statement, which would have made it a felony or not. Well, that's right. But in the version of this procedural, no, I don't believe it's procedural. The Court was vested with discretion that it otherwise did not have. You know, in the preamendment version, under the preamendment version of Section 17b-2, the Court could not have withheld misdemeanor status once it made the decision to commit Mr. De La Cerda to the youth authority. That decision increased the quantum of punishment here. It increased his maximum indeterminate period of commitment in the youth authority by two years. That clearly falls, I think, under Category 3. There's something I'm missing there. Okay. I may be asking the same question that Judge Hugg asked and just in different words, but it's going by me. The old law says when the Court commits the defendant to the youth authority, it's a misdemeanor. The new law says when the Court, upon committing the defendant to the youth authority, designates the offense to be a misdemeanor, it's a misdemeanor. Right. That's right, Your Honor. Have I got that right so far? Yes, you do. So it looks to me as though in the old days, if the judge thinks it ought to be a felony, he can't send the person to the youth authority. He has to send them to prison. Sometimes the judge is going to think it ought to be a felony, this is a bad kid, but prison is too rough for him. So then he's got a dilemma, either let the kid off too lightly in terms of the conviction or send the kid to a prison that's too tough for him. And then the new law gives the judge the option of sending them to youth authority because that's a better environment for them and still making it a misdemeanor or a felony. I can't see where it's any harsher. Well, it's harsher because, again, it extends the period of maximum confinement by a period of two years, the indefinite period, and that was the intent behind the law. I guess that's the argument that I'm missing. Explain it. Okay. Again, I don't, you know, the law before the amendment did not provide the court with discretion to withhold misdemeanor status when it imposed a youth authority commitment via 1731.5. It had no discretion to do that. But it had discretion whether to impose, whether to send the kid to the youth authority. Yes, it did. It did have authority to decide that. But the new law, and under the old law, pursuant to California Supreme Court authority, commitment to the youth authority on a Wadler offense automatically converted the crime to a misdemeanor. That was clearly established law. And afterwards, of course, the court had to designate the offense as a misdemeanor. And having not done so, again, it extended his maximum period of confinement. Isn't that more favorable to a defendant? Because the judge is not put in the position of worrying about sending someone to prison, as opposed to in this case, he can do both. He can send a person to a youth authority, even though it is a felony. If the judge believes a felony in his mind should be a felony, he still can take advantage of sending the defendant to the youth authority, where he couldn't before. I believe he could before, Your Honor. But he simply, you know, if it was a non-Wadler offense. If he believed it was a felony and should be considered a serious crime, then he had a dilemma. He figures that, well, my obligation really is to designate this as a felony, and unfortunately, I can't send him to the youth authority. I believe he still had the authority to send him to the youth authority under 1731.5. But then it wouldn't have been a felony. Well, the provision that I'm referring to under B-2 applied only to Wadler offenses. Right. That is what converted the offense into a misdemeanor. But I believe, and that was 17B-2, I believe under 1731.5, the Court still could have imposed a youth authority commitment for a youthful offender. For a felony? I believe so. That's why they changed the law. They changed the law because the California Supreme Court in Olivas found it was a violation of equal protection to impose a lengthier, you know, commitment period upon these individuals than would have been imposed upon adults. And actually within a week of the decision in Olivas, the legislature was pushing this new legislation. Misdemeanor juveniles were getting more time than adult juveniles. Yes. Than adult misdemeanors. Right. That's right. You couldn't have that. No, you couldn't. And so this was a response to the Supreme Court's decision. Right. And doing is California Supreme Court authority, which does find that this law was violative of the ex post facto prohibition. And that interpretation of 17b-2 deserves deference from this Court. Hadn't he been at — weren't the circumstances there a bit different than these? Hadn't he been sentencing? They were, Your Honor, yes. But, you know, I believe doing is still — Sentencing all took place before. That's correct. But, again, it's not the time of sentencing that controls ex post facto litigation. It is the time of the offense. And the mere retrospective application of a law does not, in and of itself, violate the ex post facto clause. You know, there has to be a substantial risk of increased punishment. I don't think that question fits. Under the case cited, the judge does not use the magic words required by the statute. But the statute is not yet in effect. So the magic words requirement cannot be imposed on that sentence given in the past. That's true. I mean, I think doing clearly represents a more egregious violation of the ex post facto clause. But I still believe it's controlling. And the other thing I would say is this. Under Strickland and Williams v. Taylor, you know, you have a situation, for example, in Williams where you have a capital case and the U.S. Supreme Court found a violation of Strickland on the ground that trial counsel failed to present mitigating evidence in defense of a death sentence. And here we have the only conceivable defense here to a prison term of 30 years to life, which counsel failed to present. And the question is, you know, and in Williams, I don't believe the Supreme Court ever said definitively that the failure of the trial attorney compelled a conclusion that the result would have been different. But it created a reasonable probability. It made the proceedings unreliable. And it failed the test of reliable proceedings with, you know, the quantum of adversarial testing that the Sixth Amendment requires. Thanks, counsel. We are way over time. Okay. Thank you. May it please the Court, Deputy Attorney General Glenn Pruden, on behalf of Warden Schwartz. Mr. Dell asserted his contention that application of the 1976 Amendment to Penal Code Section 17B is an ex post facto violation. It essentially doesn't pass muster under the test for what constitutes an ex post facto violation. As we contended in our brief and I maintain again this morning, the amendment to 17B was strictly procedural in nature. It did not increase the punishment. And by that I mean the range of available punishments to the judge was the same as it would have been under the previous edition or version of 17B, which took effect back in 1959. The only thing that 17B really did was it gave the trial judge some additional discretion in where to have the offender incarcerated. If we take a look at Section 17B, as I said, it only changed under the 76th Amendment the way in which the court would designate whether the wobbler was to be treated as a felony versus a misdemeanor. Pre-amendment, as soon as the judge committed the offender to the youth authority by operation of law, that designated the offense as a misdemeanor. Post-amendment in 76, if the judge committed the offender to the youth authority, he or she simply had to do one additional step, and that was to check a box, if you will, saying I'm designating this offense as a misdemeanor. I guess opposing counsel would argue that one additional step is what makes it ex post facto. No, Your Honor, because that's not the test for ex post facto. In looking for an ex post facto violation, we look to see whether or not the punishment was made more onerous. And I don't think anyone else was. Well, it is more onerous if it doesn't make the statement. But the discretion was still there. It was simply the means of affirming or manifesting the judge's discretion that changed. It would be different if the judge had had the ‑‑ if the amendment somehow affected the judge's ability to decide whether or not to send somebody or to designate the offense as a misdemeanor, but that's not what happened here. It was simply the procedural technical vehicle for exercising that discretion. The judge had to take one additional step. It did not remove any of that discretion from the judge. Had that discretion been removed, then I think we would be looking at an ex post facto violation. Had the effect of increasing his time in the youth authority from three years to five years. No, sir, it did not. That's ‑‑ counsel's argument is that works on the flawed premise that it would be a misdemeanor by operation of law under the ‑‑ the 1959 version of the statute. That's where she starts from. The preamendment statute, preamended statute. Yes, sir. The old statute. If the judge had sent him to the youth authority, as you just said, it would be a misdemeanor, right? That's correct. Okay. So post‑amendment, the judge sends him to the CYA. It's no longer a misdemeanor. It would have been a misdemeanor. Now, because he didn't check the box, it's a felony. That's right. And he's now eligible to spend ‑‑ he will now stay or can stay by operation of law up until he's age 25. So he gets two more years. Well, no, Your Honor. It's ‑‑ that's sort of a misleading way of reading what actually happens. The judge in this case has designated a felony. If the judge were operating under the old 1959 version of the statute, sending Mr. Della Certa to the youth authority would not have been an option. How do we know that he wouldn't have sent him there? Right. To the youth authority. There's nothing in the record that says that the judge contemplated this as being a misdemeanor defense, and that is, respectfully, Your Honor, that is Petitioner's burden in a habeas corpus action to prove all elements of his case. Do I understand this right, that where we're debating is about which decision comes first? If the judge first decides, is what this person did bad enough so that I should label it a felony, or is it something minor enough so that I should label it a misdemeanor, then there's no ex post facto way of looking at the statute. He labels it a felony or a misdemeanor, and then he sentences as appropriate to prison or the California youth authority. And the term depends on a decision the judge has made between felony and misdemeanor. But if what the judge decides first is where does this person belong, youth authority or prison, I think this person has to be in the youth authority. Under the old system, that made it misdemeanor three-year max. Under the new system, the judge can still call it a felony five-year max. Is the – do I understand how the system works? I don't. If Your Honor is asking whether or not an ex post facto violation – I'm not asking about the Constitution right now. I'm asking about how the California system works. It works now and worked under the old system. Under the old amendment, if the judge had sentenced him to the youth authority, by operation of law, it would have turned that wobbler into a misdemeanor. And all we're talking about right now is the effect of – Misdemeanor in three-year max. No, misdemeanor would be a one-year maximum. Well, but before Olivas – Youth authority? Before Olivas, though, it could have been in this – like in this case. This case was post Olivas. No, but before Olivas, it was – the statute had provided for three years. That – up to the age of 23. Yes. So like a guy like Mr. – like a guy like Mr. de la Sera, he could have had three years. He would have fallen into that age category that was considered in Olivas. So the Supreme Court eliminated that problem with the Olivas opinion. That's correct. You only get one year, which then gets us into this situation. And it also applies for people that would be sent to the youth authority under a felony sentence as well, because of the conditions of – After Oliva, if the judge thinks this kid needs more than a year, he can't send him to the youth authority, but then they amend the statute and the judge can still send him to the youth authority even though he thinks more than a year is needed. For a – if the judge deems that the offense is a felony and sends him to the youth authority, he can send him there for more than a year. But by virtue – under the old statute, by virtue of sending him to the youth authority, that automatically said that the – that the crime was a misdemeanor in the judge's estimation. So what we're really talking about are places of confinement, but that does not go to the range of the punishment, which is the critical factor in an ex post facto analysis, Your Honor. Following up on one of Judge Kleinfeld's approaches, if the judge thinks the most dependent serves his time either in a youth authority or in a prison, he's faced then with the consideration, I think it's a lot better he be in a youth authority. It doesn't make that much difference whether it's a felony or not. I'm sending him to the youth authority. Well, that makes a difference because that would have automatically been a misdemeanor. Now the judge can think about both, can think about, well, I think it – he definitely should go to the youth authority, but I also think it should be a felony, so I'm not going to sign that document. And, Your Honor, the scenario that you just posed, I don't see how anybody can – can say with a straight face that that's a more onerous punishment, which is the criteria we look at for ex post facto. It's more onerous punishment if it's considered a felony. Is it not? But the judge had that option to consider it a felony before, Your Honor. Had the option. But the point I was making, even with a straight face, was that it was – the choice he had before is different than the choice he had now. Now he can say both, that my primary concern is that this person should go to the youth authority, but I do think it should be a felony. Before, my primary idea is that it should – this should go to the youth authority, but automatically would have been a misdemeanor. And so, therefore, I send him to a state prison for a felony. So, which is worse? Your Honor is saying that it's not as bad to be sent to the youth authority under a felony as it would be to state prison. And I think that's the point I've been arguing, that it is a less onerous punishment. I think it's a little different. I keep trying to plug concrete examples into the higher level of abstraction that Judge Pug is using. And I'm thinking, suppose I'm a state judge in California, which I've never been. I practiced criminal defense in Alaska. I've got a kid in front of me, bad kid, but he's thin, small, little effeminate looking. They're going to grind him up in prison. So, number one, I decide he's going to youth authority where they're not all so big and tough. Then I'll decide from there. So, I send him to youth authority, and it really doesn't matter what he did at this point. It's a misdemeanor. It's capped if I feel like he can't survive in prison. Now, under the new system, if I've made the same decision, he can't survive in prison, I'm sending him to youth authority, I can still bump him up to a felony. So, I guess in that sense, that must be what appellant's counsel is talking about, that it's harsher. If that's harsher, Your Honor, I fail to see it. It's a misdemeanor became a felon, because I had the option, even though he's a kid that can't survive in prison. That's all in the weighing decision of the judge on how the judge wants to ultimately adjudicate the matter. And I think the Court is trying to read the larger picture of this. Kennedy. I'm very puzzled by what you just said a moment ago. Carvin. I'm sorry, sir. Kennedy. You don't see why it's harsher to have something categorized as a felony as opposed to a misdemeanor? Carvin. If the individual's conduct is worthy of a felony, then he should be sentenced to a felony. Kennedy. Well, we're talking about harsher. You're saying it isn't harsher to be designated a felony than a misdemeanor. Carvin. A felony is a — is considered a more serious crime. Kennedy. Well, sure. Carvin. Yes, Your Honor, it is. But what the Court is doing is it's taking sort of personal considerations about this particular offender that the judge might see in terms of the defender's physical stature, which is something outside of the realm of whether or not the law is ex post facto. Kennedy. Well, the problem, when you're thinking about real judges, is it's always personal. It's always an individualized sentencing. And I'm thinking, suppose I had the same kid, and I — and instead of thinking, first of all, small, thin, feminine, and also with a mouth on him, sure to get him in trouble. So he needs to go to youth authority. The first thing I think about is, this kid is doing home invasion entries into houses where he knows people will be there. He's a real desperado. This has got to be a felony. He's a very dangerous kid. So I decide felony. Then I decide small, thin, feminine-looking, mouth on him. He's going to be a wise guy and tick people off, get in trouble. Then I send him to California Youth Authority. Then the new statute is not harsher. It's more lenient because the felony decision preceded the custody decision. And it just seems like it depends on how the judge looks at the individual case, which comes first, whether the statute makes it harsher or softer, whether the where comes first or the what it is comes first. That it's a difficult decision, I would not deny, Your Honor, but that's part of the responsibility that comes with being a judge or a decision-maker, regardless of what one's profession happens to be. Is there any — Ultimately, the ultimate problem, though — It tells us definitively how to analyze the ex post facto in that sort of situation. In that particular situation, Your Honor, I am not familiar of any case that specifically deals with how the judge is supposed to decide in taking all those factors into consideration. I know that the U.S. — I guess, in a way, we don't have to resolve it if we — because all we really have is ineffective assistance. Well, the ineffective assistance rises, as Petitioner has framed the issue, it rises or falls on whether or not there was an ex post facto violation that counsel should have. Wasn't I — I thought it was just that it rose or fall on whether any competent lawyer would know that there was an ex post facto violation. Yes, Your Honor. That whether or not there was a — Been there. There wasn't an ex post facto claim that reasonable counsel should have pursued and would have prevailed on. I gather, just from my perspective, just to sum up, I gather your — the State's argument is at the time he committed this crime, Mr. de la Sera committed this crime, if one would have looked at the — what the punishment on the books could be at that time, he would have understood that he could have been sentenced either as a felon or as a misdemeanor, as a misdemeanor, correct? And that didn't change after the change in the law, is that correct? That's correct, sir. So, therefore, if you were to go literally to — if you go to the analytical framework for ex post facto principles, that's — there's no — there's been no change in his — That's what — and that's what — That's kind of your argument. Exactly, Your Honor. But, indeed, as it turns out, we know that the judge's discretionary authority changed significantly. In terms of place of confinement, Your Honor. Yeah. Now, is there any case — did you come across any cases — I think this may have been the question that Judge Kleinfeld asked — that has looked at that change as constituting an ex post facto violation? No, Your Honor. I have not. Okay. Thank you, counsel. I would ask that the district court's judgment be affirmed. Della Serta v. Schwartz is submitted. We'll hear American Civil Liberties Union v. Heller.
judges: Hug, Kleinfeld, Paez